UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

WOODWARD

                              Plaintiff,

vs.

LEWALSKI, et al.                          **Docket No. 00-A-6563**

                              Defendants.
───────────────────────────────

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the State of New York
                              Attorney for Defendants

                              GEORGE MICHAEL ZIMMERMANN
                              Assistant Attorney General of Counsel
                              Main Place Tower, Suite 300A
                              350 Main Street
                              Buffalo, NY 14202
                              (716) 853-8444
                              George.Zimmermann@ag.ny.gov

## **PRELIMINARY STATEMENT**

Defendants DENIS CAMP, MANN, HOJSAN, T. LEWALSKI, Q. SCISSUM, S. FALLON, KEARNEY and B. HUNT bring this Motion to Dismiss pursuant to the Federal Rules of Civil Procedure ("FRCP") 12 (b) (6), to dismiss the Complaint against them, for failure to state a cause of action.

The instant case was commenced on May 11, 2009, by the filing of a Complaint, by the plaintiff, *pro se* (Doc. No. 1) which was later amended by filing an Amended Complaint on February 19, 2010 (Doc. 7) and Second Amended Complaint on March 18, 2010 (Doc 10; hereinafter "Compl") . The plaintiff is an inmate in the custody of the New York Department of Correctional Services ("DOCS"). Compl. ¶ 3, page 1.  He brings the instant suit pursuant to 42 USC § 1983. Compl. ¶ 2, page 1.  The Complaint alleges that the plaintiff was subject to various indignities by the defendants in this action, while an inmate at Wende Correctional Facility on December 15, 2008 and mostly during the month of January, 2009. Compl., pgs. 5 – 9, "first claim", "second claim", "third claim", "fourth claim" and "fifth claim".  As is detailed below, the plaintiff fails to allege proper causes of action against any of the moving defendants and the Complaint should therefore be dismissed, as against those defendants.

## **STATEMENT OF FACTS**

The plaintiff alleges multiple actions against all the defendants as the Complaint contains five separate claims. The first claim is alleged to have occurred on December 15, 2009. Compl., pg. 5, "first claim". The plaintiff alleges that on that day the defendant Mann retaliated against him after the plaintiff filed two separate grievances.  One grievance for being denied the right to attend religious services, the other for lack of heat and employees smoking cigarettes indoors. Compl. pg 5,"first claim".  Plaintiff also alleges that he helped another inmate prepare a

2

grievance against defendant Mann. Compl. pg 5, "first claim".  The plaintiff alleges that in retaliation, defendant Mann moved the plaintiff to a roach infested cell where plaintiff was forced to sleep with the lights on and roaches living in his food items, clothes and plaintiff's sleeping area. Id.

The second claim is alleged to have occurred on January 1st, 2009.  On that date, the plaintiff states that he was taken into the mess hall hallway for an unwarranted pat frisk by defendants Camp, Hojsan, and Scissum. Compl. pg 5 and pg 6, "second claim".  While the plaintiff's hands were on the wall, defendant Lewalski pulled one of the officers to the side and whispered something to him. Compl. pg 6.  Thereafter, defendant Lewalski grabbed plaintiff by his neck, choked him and then punched plaintiff in the back of the head. Id.  According to the plaintiff, Lewalski threatened the plaintiff with "box/isolation placement and physical abuse" if he told anyone about it.  Plaintiff was then placed on keep lock for twelve days. Id.  Plaintiff alleges that above acts were in retaliation to plaintiff filing grievances against some B Block Officers two weeks ago. Compl. pg 5, "second claim".

The third claim which plaintiff alleges occurred on January 10th, 2009 while he was in keep lock.  On that date defendant Fallon came to plaintiff's cell to interview him for his grievance filed based on the second claim stated above. Compl. pg , "third claim".  Plaintiff states that he informed defendant Fallon that he was in keep lock for ten days without any misbehavior report or any other reason known to him. Id.  According the plaintiff, defendant Fallon filed a false report recommending that plaintiff be placed on involuntary protective custody because of plaintiff's life was in danger. Id.

Plaintiff alleges that fourth claim occurred on January 12, 2009 when, based on defendant Fallon's recommendation that plaintiff be put on involuntary protective custody, defendants Hunt

and Barker sought to remove plaintiff from his cell and place him in E-Block where protective custody and involuntary protective custody inmates are confined. Compl. pg 7 and pg 8, "fourth claim".  According to the plaintiff, when Hunt and Barker arrived at plaintiff's cell Hunt stated "Muslims wanna kill you cause of that homo shit huh". Compl. pg 8.  Further, plaintiff alleges that because of plaintiff's past grievances, Hunt allowed other inmates to steal plaintiff's personal property worth $137. *Id.*

The fifth claim concern's plaintiff's allegation that between January 8, 2009 and January 11, 2009, defendant Kearney removed plaintiff from his mess hall duties. Compl. pg 9. Plaintiff alleges that this act was in retaliation for the grievances filed by him against the employees of Wende Correctional Facility, particularly against defendants Camp, Hojsan, Scissum and Lewalski. *Id.*  When plaintiff wrote to Deputy Superintendent of Program Services Karen Crowley about the matter, plaintiff received a response from Szemplenski that Kearney removed the plaintiff from mess hall duties for security reasons. *Id.*  Plaintiff further states that subsequently he filed a grievance regarding his removal from mess hall duties, and Kearney "circulated" a response that plaintiff was removed  because of aggressive homosexual behavior. *Id*.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12 (b)(6) may be granted only "if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hamilton Ch. Of Alpha Delta Phi v. Hamilton College, 128 F.3d 59, 63 (2d Cir. 1997), quoting Conley v. Gibson, 355 U.S. 41, 46 (1957).  In determining a motion to dismiss under Rule 12 (b)(6) the court must presume all factual allegations of the Complaint to be true and make all reasonable inferences in favor of the

4

non-moving party. *Id*. However, legal conclusions, deductions, or opinions are not given a presumption of truthfulness. <u>Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck</u>, 463 F.2d 620 (2d Cir. 1972), cert. denied, 410 U.S. 944 (1973).

In order to survive a motion to dismiss, allegations must be specific rather than offering "a litany of general conclusions that shock but have no meaning." <u>Tufano v. One Toms Point Lane Corporation</u> et al, 64 F. Supp 2d 119 (E.D.N.Y 1999), quoting <u>Barr v. Abrams</u>, 810 F.2d 358, 363 (2d Cir. 1987). If the plaintiff's Complaint contains nothing more than "conclusory, vague, or general allegations" it must be dismissed under 12 (b)(6). <u>Tufano</u> at 123, quoting <u>Sommer v. Dixon</u>, 709 F.2d 173, 175 (2d Cir. 1983); see also <u>Neustein v. Orbach</u>, 732 F. Supp 333, 346 (E.D.N.Y. 1990) (holding that to survive a motion to dismiss, a civil rights complaint must include more than bald unsubstantiated claims).

On the issue of the sufficiency of particular allegations, the Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009) determined that the plaintiff's Complaint failed to plead sufficient facts to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u> at 1149, citing, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, at 570 (2005). The Court ruled that a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Ashcroft v. Iqbal</u> at 556. "(W)here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged  -- but it has not "show[n]" -- 'that the pleader is entitled to relief.' " <u>Ashcroft v. Iqbal</u>, *Id*. Prior to <u>Igbal</u>, in the Second Circuit, "complaints relying on the civil rights statute [were] insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general

5

conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987); Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988); Ruderman v. Police Dep't of NewYork, 857.Supp. 326, 330 (S.D.N.Y. 1994).

As will be seen below, the Complaint in the case at bar fails to state a claim upon which relief can be granted pursuant to FRCP 12 (b)(6) and must therefore be dismissed.

### Point I

### THE PLAINTIFF'S ALLEGATIONS OF RETALIATORY CONDUCT ARE INSUFFICIENT TO SUPPORT A CONSTITUTIONAL VIOLATION

As recognized in Warburton v. Underwood, 2 F.Supp. 2d 306, 313 (WDNY, 1998), it is well settled that "the mere allegation that [a defendant] acted out of retaliatory motives is not sufficient to elevate plaintiff's claims to the level of constitutional violations."  "Because claims of retaliation are easily fabricated, the courts must 'examine prisoners' claims of retaliation with skepticism and particular care." Smith v. Napoli, 2008 WL 355573 (WDNY, 2007).

The Warburton Court noted that the Second Circuit held in Flaherty v. Coughlin, 713 F.2d 10, 13 (2nd Cir. 1983) as follows:

> "We agree . . . that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes. If full discovery were to be permitted on every such claim, the result would indeed be chaotic. However, some of these claims may have merit and, where that is the case, the prisoners making them must be accorded the procedural and substantive rights available to other litigants. The exact process to be followed will vary according to the circumstances of each case and district courts must exercise their sound discretion in determining the nature and amount of discovery to be allowed. The goal, however, is the same in each case: to sift out those claims where further discovery may possibly yield evidence in support of the prisoner's allegations from those where it is, or becomes, evident that no factual basis exists.  For example, a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case ought usually be pursued with full discovery. However, a complaint which

6

>alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. In such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants. A third category of allegations also exists, namely a complaint which alleges facts giving rise to a colorable suspicion of retaliation. Such a claim will support at least documentary discovery."

Warburton v. Underwood, 2 F.Supp.2d 306, 313 (WDNY 1998).

For a plaintiff to succeed in his retaliation claim, he must show that 1) the conduct cited as the cause for retaliation is protected; 2) the defendant took adverse action against the plaintiff; and 3) there was a causal connection between the protected conduct and the adverse action. Brewer v. Kamas, 533 F.Supp.2d 318, 328 (W.D.N.Y.,2008) citing Davis v. Goord, 320 F.3d 346, 352 (2d Cir.2003).  In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. See Colon v. Coughlin, 58 F.3d 865, 872 – 873 (2d Cir.1995).

As to the first claim, the Complaint only states the protected activity i.e. grievances filed by the Plaintiff but fails to establish a casual connection between the protected activity and him being placed in a roach infested cell.  Plaintiff has not pleaded sufficient facts that demonstrate that the challenged conduct was a substantiating or motivating factor in adverse action taken by defendant Mann.  Allegations of adverse actions alone are insufficient to establish retaliation absent facts supporting an inference of a causal connection between the adverse actions and the protected conduct. See Dawes, 239 F.3d at 492; Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000).

7

The same is true of the allegations in the second claim. Although, Plaintiff concludes that every act described under the second claim was the result of his filing grievances against several B-Block employees two weeks ago, he unmistakably fails to establish that a causal connection exists and the alleged acts committed by the defendants on January 1st, 2009 were in retaliation of the said grievances. The Complaint is wholly deficient in providing allegations that the complained of conduct was retaliatory, and therefore unconstitutional.

The third claim presents the classic type of retaliation claim that should be dismissed as a matter of law. Plaintiff does not identify any specific protected activity in the Complaint and neither does he demonstrate any casual connection between the alleged false report placing him in involuntary protective custody and protected conduct. Nor does he allege any other protected conduct, such as his prior law suits or prior grievances. The only allegation as to retaliatory conduct is the plaintiff's own assertion that it is retaliatory.

The above is also true of the allegations stated in the fourth claim. The basis of plaintiff's retaliation claim is not clear and he fails to articulate any specific protected activity in his Complaint. Plaintiff simply states that when defendant Hunt arrived at his cell he stated that "muslims wanna kill you cause of the homo shit huh" and handcuffed him and escorted him to the E- Block. He further states that because of plaintiff's "past grievances" defendant Hunt allowed inmates to steal plaintiff's personal property. The plaintiff does not clarify his reference to "past grievances" and neither does he establish any casual connection between "past grievances" and false reports about the matter.

As regards the fifth claim, plaintiff alleges that defendant Kearney removed him from his mess hall job duties in retaliation for his grievances against the employees of the Wende Correctional Facility. Since there is no allegation of protected activity, plaintiff's retaliation

claim should be dismissed.  Plaintiff also states that when he wrote to the Deputy Superintendent of Program Services Karen Crowley about his termination of mess hall duties, he received a response stating that defendant Kearney removed him because of "security reasons".  Plaintiff also contends that after he filed grievances with regard to his termination from mess hall duties, defendant Kearney circulated a response that the plaintiff was removed for "aggressive homosexual behavior".  It is submitted that Plaintiff's retaliation claim in the above context should not survive because plaintiff has failed to establish any cause of action.  He does not identify any specific protected activity nor does he indicate clearly the adverse action against him.

Based on the above, the plaintiff's claims of retaliation should be denied as a matter of law.

## Point II

### THE PLAINTIFF'S ALLEGATION FAILS TO ESTABLISH AN EIGHTH AMENDMENT CLAIM

Under the first claim, plaintiff also alleges an Eighth Amendment violation for infliction of cruel and unusual punishment against defendant Mann for placing him in a roach infested housing cell.  In order to establish deliberate indifference, an inmate must show "(1) that the deprivation alleged is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and (2) that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain." Trammell v. Keane, 338, F.3d 55, 161 (2d Cir. 2003) (citing Farmer, 511 U.S. at 834).  However, the prohibition against cruel and unusual punishment does not extend to the *de minimis* incidents, provided that incidents are "not of a sort repugnant to the conscience of mankind." See Baskerville v. Mulvaney, 411 F.3d 45, 48 (2d Cir.2005); Wright v. Goord 554

9

F.3d 255 (2d Cir 2009).

In the instant case, plaintiff alleges that he was transferred to a roach infested housing cell where he was forced to sleep with lights on and had roaches living in plaintiff's food items, clothes and in the plaintiff's sleeping area. However, plaintiff does not allege any specific injury other than sleep deprivation as a result of such transfer nor how long this occurred. Even if we were to assume that sleep deprivation qualifies as injury it is submitted it is *de minimis*. See Abascal v. Fleckenstein 2008 WL 3286453 (W.D.N.Y. 2008) (Turning of power in the inmate's cell briefly on two occasions is a *de minimus* deprivation and not objectively sufficiently serious to state a claim under the Eighth Amendment, particularly, where plaintiff has not alleged that he suffered any injury as a result of the brief loss of electricity.); Lee v. Mackay 29 Fed. Appx 679 (2d Cir. 2002) (Plaintiff fails to state a claim of an Eighth Amendment violation because he challenges only the manner in which defendant served his food and provides no allegations or evidence that the food he received one hour late was somehow tainted or inadequate).

**Point III**

**THE PLAINTIFF'S ALLEGATIONS AGAINST CONFINEMENT FAILS TO STATE A DUE PROCESS VIOLATION.**

The second claim alleges a due process violation against defendant Sergeant Lewalski for placing plaintiff in keep lock for twelve days, allegedly without any reason. In evaluating an inmate's procedural due process claim with respect to confinement within prison, a court must consider "'(1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.'" Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir.2000) (quoting Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir.1997)). A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline "imposes [an] atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life," <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995); see <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir. 1996) (*per curiam*).

While the Second Circuit has "not established a bright-line rule as to how lengthy a SHU confinement will be considered atypical and significant," <u>Sims v. Artuz</u>, 230 F.3d 14, 23 (2d Cir.2000), Courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship." <u>Palmer v. Goss</u>, No. 02 Civ 5804(HB), 2003 WL 22327110, at 6 (S.D.N.Y. Oct. 10, 2003), aff'd, <u>Palmer v. Richards</u>, 364 F.3d 60 (2d Cir. 2004); <u>Smith v. Taylor</u>, No. 03-0202, 2005 WL 2019547 (2d Cir. Aug. 23, 2005) (determining that 45 days disciplinary confinement in SHU, absent evidence of conditions more onerous than those generally present in the SHU, was insufficient to establish a protected property interest.); <u>Durran v. Selsky</u>, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003), quoting, <u>Tookes v. Artuz</u>, No. 00CIV4969, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest.").

In the instant case, plaintiff was not confined to a Special Housing Unit (SHU) but rather under keep lock in his own cell, which is clearly less onerous than SHU conditions and only for a period of twelve days.  Also, plaintiff has failed to allege any circumstances, other than the length of his confinement, that his confinement under keep lock for twelve days was in any way atypical or a significant hardship in relation to the ordinary incidents of prison life.  The focus of his due process allegations has only been on the duration of the confinement without any reference to the conditions of the confinement.  Plaintiff has therefore not met the "atypical and significant hardship" standard of <u>Sandin</u>, and his due process claim should be dismissed. See

11

Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir.2001) (even though inmate plaintiff "did not receive the process that was due, he cannot succeed on his [due process] claims if he fails to establish a protected liberty interest").

### Point IV

### THE PLAINTIFF DOES NOT HAVE A CONSTITUTIONAL RIGHT TO BE FREE FROM FALSE DISCIPLINARY ACTIONS

The third claim in the Complaint appear to allege that false reports were issued against the plaintiff. The plaintiff alleges that on January 10th, 2009 defendant Lieutenant S. Fallon, post his interview with plaintiff concerning plaintiff's grievances mentioned under the second claim, submitted a false report recommending that plaintiff be placed in involuntary protective custody because of plaintiff's life was in danger. The plaintiff merely alleges that the said report was retaliatory in nature without identifying any protected activity nor establishing any casual connection between any protected activity and the alleged false report . A "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F. 3d 857, 862 (2d Cir. 1997) citing Freeman v. Rideout, 808 F. 2d 949, 951 (2d Cir. 1986). Only when the false report is motivated by a desire to retaliate for an inmate's exercise of protected activity, does it violate due process. Franco v. Kelly, 854 F. 2d 584, 588 - 589 (2d Cir. 1988). As stated above, plaintiff has failed to establish a retaliation claim as regards the third claim, therefore he has failed to state a cause of action against the said defendant Fallon.

### Point V

### THE PLAINTIFF HAS NO PROTECTED INTEREST IN ANY PARTICULAR PRISON ASSIGNMENT

In New York a prisoner has no protected liberty interest in a particular job assignment

during his stay at a correctional facility. See Frazier v. Coughlin 81 F.3d 313, 318 (2d Cir. 1996); Cooper v. Smith, 99 A.D.2d 644, 471 N.Y.S.2d 932, 933 (4th Dep't), *aff'd,* 63 N.Y.2d 615, 479 N.Y.S.2d 519, 468 N.E.2d 701 (1984); Also, see Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2001). Such property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007).

In the instant case, the plaintiff contends that defendant Kearney removed him from his mess hall job duties in retaliation for his grievances against defendants Camp, Hojsan, Scissum and Lewalski.  In order to succeed on this claim, in the absence of retaliation, the plaintiff must first establish that he had a constitutionally protected property interest in his mess hall job assignment which clearly the plaintiff did not have. Johnson v. Rowley 569 F.3d 40, 44 (2d Cir. 2009).  Since plaintiff has no property interest in the mess hall job duties, no cause of action arises as regards his fifth claim, and the claim against defendant Kearney should be dismissed as a matter of law.

## **Conclusion**

Based on the foregoing, defendants submit that the Complaint must be dismissed as against defendants Denis Camp, Mann, Hojsan, T. Lewalski, Q. Scissum, S. Fallon, Kearney and B. Hunt.

Dated: April 4, 2011
      Buffalo, New York

                  ERIC T. SCHNEIDERMAN
                  Attorney General of the State of New York
                  Attorney for Defendants
                  BY:

                  /s/ George Michael Zimmermann
                  GEORGE MICHAEL ZIMMERMANN
                  Assistant Attorney General of Counsel
                  Main Place Tower, Suite 300A
                  350 Main Street
                  Buffalo, NY 14202
                  (716) 853-8444
                  George.Zimmermann@ag.ny.gov