UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAWN WOODWARD, 00-A-6563,                      **REPORT AND**
                                                 **RECOMMENDATION**
                          Plaintiff,

v.                                               09-CV-00451(A)(M)

CORRECTIONAL OFFICER MANN, et al.,

                          Defendants.

_____

## INTRODUCTION

Defendants have moved for partial dismissal of the Second Amended Complaint

[11] and plaintiff has moved for a default judgment [13].[1]  These motions, being dispositive, have

been referred to me by Hon. Richard J. Arcara for a report and recommendation [3].  For the

following reasons, I recommend that defendants' motion for partial dismissal be granted in part and

denied in part, and that plaintiff's motion for a default judgment be denied.

## BACKGROUND

Plaintiff, a prisoner proceeding *pro se*, seeks monetary damages and other relief

pursuant to 42 U.S.C. §1983 arising from his confinement at the Wende Correctional Facility

("Wende").  Second Amended Complaint [1].  Defendants Camp, Fallon, Hojsan, Lewalski, Mann

and Scissum have moved for partial dismissal of plaintiff's Second Amended Complaint pursuant to

Fed. R. Civ. P. ("Rule") 12(b)(6) [11].[2]  Plaintiff has opposed this motion and moved for a default

judgment against all defendants [13].

---

[1]        Bracketed references are to the CM/ECF docket entries.

[2]        The Notice of Motion indicates that the motion is brought by all defendants except
Kearney and Hunt [11], whereas the Memorandum of Law indicates that the motion is brought on
behalf of all defendants [11-1], pp. 2, 14.  Nevertheless, defendants' opposition to plaintiff's motion for a
default judgment makes evident that defendants Kearney and Hunt have not appeared in this case.
Zimmerman Declaration [16], ¶¶12, 28, 31.

**ANALYSIS**

A.      **Plaintiff's Motion for a Default Judgment**

Plaintiff argues that he is entitled to a default judgment because in December 2010 the "court directed the U.S. Marshal Service to serve defendants", but "[d]efendants did not respond until April 4th, 2011 by filing a . . . Motion for Summary Judgment" .  Plaintiff's Motion [13], ¶¶2-3.  He also argues that they failed to respond to his Eighth Amendment claim asserted in his Second Claim, which was not addressed in the dismissal motion.  Id., ¶4.  Defendants oppose the motion, arguing that defendants Camp, Fallon, Hojsan, Lewalski, Mann and Scissum have appeared by way of their dismissal motion, and plaintiff fails to offer any proof of service.  Zimmerman Declaration [16].

This case was commenced by Complaint filed on May 11, 2009 [1], and plaintiff moved on January 20, 2010 for leave to file an amended complaint [5].  On February 18, 2010, Hon. Michael A. Telesca granted plaintiff's motion for leave to amend in part, and also granted him leave to file a Second Amended Complaint by March 29, 2010, to replead his retaliation and due process claims [6].  In compliance with Judge Telesca's Order, plaintiff filed a Second Amended Complaint on March 18, 2010, and summonses were issued to the defendants in December 2010.  *See* December 20 and 29, 2010 entries.  All defendants except Kearny and Hunt moved for partial dismissal on April 4, 2011 [11]. To date, defendants Kearney and Hunt have not otherwise appeared in this case.

Obtaining a default judgment is a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is

shown by affidavit or otherwise, the clerk must enter the party's default".  Rule 55(a). Thereafter, a

judgment by default may be entered upon application.  *See* Rule 55(b).

   Here, plaintiff has failed to first obtain a clerk's entry of default before moving for a

default judgment.  I recognize that "courts may exercise their own power to enter default as a

sanction or otherwise".  Ariani, Inc. v. 1075 Concourse Tenants Corp., 1999 WL 637238, *4

(S.D.N.Y. 1999).  *See* Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981) (holding that the failure to

seek an entry of default before moving for a default judgment "was largely technical because the

hearing on the . . . motion for the entry of default judgment afforded the . . . same opportunity to

present mitigating circumstances that they would have had if a default had been entered and they

had then moved under Rule 55(c) to set it aside").

   However, I cannot excuse this failure here because it does not appear that a default is

warranted in any event. Defendants Camp, Fallon, Hojsan, Lewalski, Mann and Scissum have

appeared by their motion to dismiss, and without proofs of service before me or any indication on

the docket when service was accomplished, it is not possible for me to conclude that these

defendants were ever in default.  I also conclude that there is no basis to grant a default judgment

based on their failure to file an answer with respect to those claims not addressed by their motion for

partial dismissal.  *See* Finnegan v. University of Rochester Medical Center, 180 F.R.D. 247, 250

(W.D.N.Y. 1998) (Larimer, J.).

   Although defendants Kearney and Hunt have not appeared, there is no indication in

the record that they have been served with the Summons and Second Amended Complaint.  I have

also been advised by the Clerk's Office that no executed waivers of personal service have been

received to date.  Thus, I cannot conclude that  their 21-day time period for filing an answer has

expired.  Rule 12(a)(1)(A)(i).

"It is basic that in order for a default judgment to be taken against a defendant, a plaintiff must show that the defendant has been served and that personal jurisdiction over the defendant was thereby acquired." Goossens v. Wade, 2010 WL 2649882, *2 (W.D.N.Y. 2010) (Foschio, M.J.). Since plaintiff has failed to establish that defendants Kearney and Hunt were served with the Summons and Second Amended Complaint, I recommend that plaintiff's motion for a default judgment be denied, without prejudice to renewal upon a proper showing. In the interim, I will ask the Clerk of the Court to attempt to re-serve these defendants with the Summons and Second Amended Complaint.

**B.**      **Defendants' Motion for Partial Dismissal**

  **1.**      **Dismissal Standard**

"When, as here, the complaint is filed by a *pro se* plaintiff, we construe the complaint liberally, interpreting it to raise the strongest arguments that it suggests." Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir. 2010). Moreover, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated". Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).

"Notwithstanding this rule, however, even when a plaintiff is proceeding *pro se*, all normal rules of pleading are not absolutely suspended." Johnson v. Connolly, 2008 WL 724167, *6 (N.D.N.Y. 2008). Thus, where the problem with plaintiff's complaint is "substantive [and] better pleading will not cure it [,] . . . [s]uch a futile request to replead should be denied". Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Moreover, leave to amend is "taken very seriously and with consideration that the Court need not allow unlimited efforts to state a claim". Henry v. Cuomo, 2008 WL 489258, *3 (W.D.N.Y.2008) (Telesca, J.).

-4-

Although plaintiff's response to defendants' motion to dismiss attaches various exhibits, I have elected not to consider them in resolving the motion, which can be resolved based upon the facial allegations of the Second Amended Complaint. *See* Rule 12(d).

### 2.    Plaintiff's First Claim

#### a.  First Amendment Claim

Plaintiff alleges that "[o]n 12-15-08 defendant . . . Mann retaliated against [him], after [he] filed 2 separate grievances . . . against CO Mann, by moving plaintiff to a roach infested housing cell".  Second Amended Complaint [10], First Claim.  Defendants argue that plaintiff "fails to establish a causal connection between the protected activity and him being placed in a roach invested cell."  Defendants' Memorandum of Law [11-1], p. 7.

Because of the "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated", courts shall "examine prisoners' claims of retaliation with skepticism and particular care."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  "A finding of sufficient permissible reasons to justify state action is 'readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority.'"  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996).  Thus, "a plaintiff asserting such a claim bears a heightened burden of proof".  Green v. Phillips, 2006 WL 846272, *3 (S.D.N.Y. 2006).

"To establish a *prima facie* case of First Amendment retaliation, [plaintiff] must demonstrate '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him], and (3) that there was a causal connection between the protected

speech and the adverse action.'" <u>Chavis v. Ferris</u>, 358 Fed.Appx. 258, 260 (2d Cir. 2009)(summary order). "In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation." <u>Bunting v. Conway</u>, 2010 WL 5332280, *7 (W.D.N.Y. 2010)(Schroeder, M.J.), <u>report and recommendation adopted</u>, 2010 WL 5313308 (W.D.N.Y. 2010)(Arcara, J.).

Plaintiff's claim lacks any indication of the temporal proximity between plaintiff's grievances against defendant Mann and his cell transfer. Even if "a causal connection between an adverse action and protected speech [could] be indirectly established by showing that protected activity was followed closely in time by the adverse action, . . . a plaintiff must still allege that defendants were aware of the protected activity. <u>Pavone v. Puglisi</u>, 2009 WL 3863362, *2 (2d Cir. 2009)(summary order). "The plaintiff has not met this standard. Without further allegations regarding the defendant's awareness of the protected speech ( <i>i.e.</i>, his grievance . . . ) or other facts sufficient to support an inference that protected conduct played a role in the alleged adverse actions taken against the plaintiff, he has not sufficiently pleaded a claim of retaliation." <u>Braham v. Lantz</u>, 2010 WL 1240985, *5 (D.Conn. 2010). Therefore, I recommend that this claim be dismissed, without prejudice to plaintiff filing a Third Amended Complaint repleading this claim.[3]

---

[3]     Although I am granting plaintiff leave to file a Third Amended Complaint in an attempt to replead his dismissed claims, that will be his final opportunity. <i>See</i> <u>Henry</u>, 2008 WL 489258 at *3.

b.      **Eighth Amendment Claim**

Plaintiff's First Claim also alleges an Eighth Amendment violation for defendant Mann placing him in a "roach invested housing cell" where he "was forced to sleep with the lights on, thus being subjected to sleep deprivation, having roaches living in [his] food items, clothes, and in and on [his] sleeping area". Second Amended Complaint [10], First Claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment". "To prove a violation of the Eighth Amendment, an inmate must show (1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain.'" Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003)(*quoting* Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Defendants argue that "plaintiff does not allege any specific injury other than sleep deprivation as a result of such transfer nor how long this occurred" and "[e]ven if we were to assume that sleep deprivation qualifies as injury it is submitted it is *de minimis*." Defendants' Memorandum of Law [11-1], p. 10.

Although plaintiff places no time frame on the allegations of his first claim, from the allegations of the Second Amended Complaint it appears that plaintiff remained confined in this cell, at most, from December 15, 2008 through his transfer to involuntary protective custody on January 12, 2009. "[A] prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008). However, this relatively limited period of exposure, without more, is insufficient to state a claim. *See* id. ("'the allegation of sixteen

months of infestation and significant physical harm' distinguished his case from the typical pest-infestation complaint").

Moreover, "[a]lthough sleep can constitute a basic human need, Plaintiff fails to allege any sufficiently serious deprivation of her basic human need for sleep as to constitute an Eighth Amendment violation." Bartee v. Garrett, 2010 WL 4781440, *5 (S.D.W.Va. 2010) (dismissing claim based upon excessive noise, continual lighting, and inadequate ventilation in cell). Lacking is any allegation of a specific injury from the illumination of his cell and resultant sleep deprivation during this relatively limited period. *See* Walton v. Grounds, 2011 WL 632842, *2 (W.D.Tex. 2011) ("Walton states sleep deprivation can cause hypertension and stress, however he does not allege he suffers these conditions. Walton has not alleged an actionable injury and consequently has failed to state a non-frivolous claim").[4]  Therefore, I recommend that this claim be dismissed, with prejudice.

### 3.    Plaintiff's Second Claim

#### a.    First Amendment Claim

In relevant part, plaintiff alleges that "[o]n January 1st, 2009 defendant COs Camp, Hojan and Scissum - someless [*sic*] than two weeks after filing grievances on several employees in B-Block, etc" assaulted plaintiff and then placed him in keeplock.  Second Amended Complaint [10], Second Claim.  Defendants repeat their argument that this claim "unmistakably fails to

---

[4]      *Compare with* Holmes v. Grant, 2006 WL 851753, *12  (S.D.N.Y. 2006) ("Plaintiff here has alleged specific injury resulting directly from Eastern's twenty-four hour lighting policy and the resultant sleep deprivation, namely "fatigue during the day, loss of appetite, vomiting, migraine headaches, anxiety, elevation of blood pressure, and a violent aggravation of rashes all over [his] body.' . . .  Plaintiff's allegations, if true, can sustain a claim . . . that this lighting policy posed an objectively unreasonable risk to his health").

establish that a causal connection exists and the alleged acts committed by the defendants . . . were in retaliation of the said grievances ".  Defendants' Memorandum of Law [11-1], p. 8.[5]

       Although plaintiff alleges that this conduct occurred two weeks after his grievance, there is no indication on the face of the Second Amended Complaint whether these defendants were the subject of the grievance against the B-Block employees or were aware of such grievance.  Thus, plaintiff's Second Amended Complaint fails to allege facts sufficient to state a retaliation claim. *See* Braham, 2010 WL 1240985 at *5. Therefore, I recommend that this claim be dismissed, without prejudice to plaintiff filing a Third Amended Complaint repleading this claim.

       **b.**      **Due Process Claim**

       Plaintiff's second claim also alleges a due process violation arising from plaintiff's keeplock confinement for 12 days "with no misbehavior report and/or reason given to plaintiff or known to plaintiff." Second Amended Complaint [10], p. 6.  Defendants argue that plaintiff fails to allege any circumstances that made the conditions of his keeplock confinement atypical. Defendants' Memorandum of Law [11-1], Point III.

       The threshold issue on any procedural due process claim involving an inmate "is always whether the plaintiff has a property or liberty interest protected by the Constitution". Narumanchi v. The Board of Trustees of the Connecticut State University, 850 F.2d 70, 72 (2d Cir. 1988).  "An inmate has a protected liberty interest in not being confined only if 'the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation.'" Durran v. Selsky, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003) (Larimer, J.).  "Although

---

[5]     The Second Claim also asserts Eighth Amendment excessive force and failure to protect claims arising from this alleged conduct ([10], p. 6) which are not the subject of defendants' dismissal motion.

determining whether a particular confinement 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' . . . will involve factual determinations . . . 'the ultimate issue of atypicality is one of law.' Among the factors to be considered are '(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Id. (*quoting* Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Plaintiff does not allege that his 12 days of keeplock confinement constituted an "atypical and significant" deprivation of a protected liberty interest.  *See* Schmelzer v. Norfleet, 903 F.Supp. 632, 634 (S.D.N.Y.1995) (holding that an "eleven day confinement in keeplock does not constitute an atypical, significant hardship implicating a protected liberty interest").  Therefore, I recommend that this claim be dismissed, with prejudice.

### 4.    Plaintiff's Third Claim

#### a.    First Amendment Claim

Plaintiff alleges that on January 10, 2009, defendant Fallon came to his cell to interview him concerning the grievance he filed against defendants for the conduct arising out of the second claim and "also expressed his concern for being on keeplock for 10 days, with no misbehavior report and/or reason given."  Second Amended Complaint [10], Third Claim. According to plaintiff, Fallon left plaintiff [*sic*] cell and on the sameday [*sic*] falsified a report recommending that plaintiff be placed in involuntary protective custody because [his] life was in danger."  Id.  Defendants argue that this claim should be dismissed because "[p]laintiff does not identify any specific protected activity . . . and neither does he demonstrate any causal connection

-10-

between the alleged false report . . . and protected conduct."  Defendants' Memorandum of Law [11-1], p. 8.

Unlike the first two retaliation claims, it is alleged that defendant Fallon knew of plaintiff's grievance for the alleged assault on January 1, 2009, and that plaintiff also made complaints directly to him concerning his keeplock confinement.  Given these allegations, I conclude that the factual allegations plausibly show a causal connection between plaintiff's complaints and defendant Fallon filing a false report that same day.   While discovery may ultimately reveal that plaintiff's claims cannot withstand a motion for summary judgment, he has sufficiently pled facts alleging that he was retaliated against to survive dismissal.

**b.    Due Process Claim**

"[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. . . . There must be more, such as retaliation against the prisoner for exercising a constitutional right."  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).[6] Therefore, having recommended that defendants' motion to dismiss plaintiff's retaliation claim be denied, I also recommend that their motion be denied to the extent it seeks to dismiss plaintiff's due process claim arising from the filing of the false report.

_____

[6]      *Compare with* Smith v. United States, 2011 WL 777969, *9  (N.D.N.Y. 2011) ("Because Smith . . . cannot establish a claim of retaliation, any remaining due process claim regarding the issuance of false disciplinary reports must also fail").

5.      **Plaintiff's Fourth Claim**

When plaintiff was transferred to involuntary protective custody on January 12,

2009, he alleges that defendant "Hunt allowed those inmates who he has a personal relationship to

steal $137.00 worth of personal property and then falsified reports on the matter."  Second Amended

Complaint [10], Fourth Claim.  Because this claim is asserted only against defendant Hunt, who has

not appeared in this action, I recommend that this aspect of defendants' motion be denied, without

prejudice to renewal by defendant Hunt.


6.      **Plaintiff's Fifth Claim**

Plaintiff alleges that between January 8 and January 11, 2009, defendant Kearney

removed plaintiff from his mess hall job in retaliation for his grievances arising from the conducted

alleged in the second claim.  Second Amended Complaint [10], Fifth Claim.

The motion is not brought on behalf of defendant Kearney, who is the subject of this claim.

Therefore, I recommend that this aspect of defendants' motion be denied, without prejudice to

renewal by defendant Kearney.


**CONCLUSION**

For these reasons, I recommend that 1) defendants' motion for partial dismissal [11]

be granted to the extent it seeks dismissal of plaintiff's first and second claims, without prejudice to

plaintiff filing a Third Amended Complaint, and otherwise be denied, without prejudice to renewal

as against the fourth and fifth claims, and  that 2) plaintiff's motion for a default judgment [13] be

denied, without prejudice to renewal. If  my recommendation to dismiss  plaintiff's first and second

claims is adopted by Judge Arcara, plaintiff may file a Third Amended Complaint repleading the

dismissed claims within 30 days of Judge Arcara's order, and defendants reserve their right to move against that pleading.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by September 5, 2011 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

DATED:        August 17, 2011


/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

-13-