UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

SHAWN WOODWARD, 00-A-6563,

                Plaintiff,                **LEWALSKI DECLARATION**

-vs-

CORRECTIONAL OFFICER MANN, et. al.,      **Docket No. 09-CV-0451**

                Defendants.
───────────────────────────────────────

      TIMOTHY LEWALSKI, declares under penalty of perjury that the following is true and correct:

1.    I am employed by the State of New York Department of Corrections and Community Supervision ("DOCCS"), at the Wende Correctional Facility.  At all times relevant to this law suit I have held the rank of Sergeant.

2.    I make this declaration upon personal knowledge and upon my review of documents generated by DOCCS in the ordinary and normal course of business as a result of the events at issue in this action.

3.    I am told that the plaintiff, inmate Sean Woodward, alleges that I choked him, punched him in the head, and threatened him with physical abuse and time in "the box", in retaliation for his exercising his First Amendment rights.  He also claims that I placed him on keeplock for twelve days, also in retaliation.  These allegations are false.

4.    Prior to January 1, 2009, I did not recall knowing inmate Woodward, nor do I recall ever speaking to him.  I do not recall having any knowledge as to whether he had ever filed a grievance or a law suit, or the subject of any grievance or law suit.

5.     On January 1, 2009, I was working my regular bid job, what is known as Mega. This includes supervision of the messhall, visiting area, the front gate, the Law Library, and the Old School, among other areas. My shift was from 2 p.m. to 10 p.m.

6.     I am informed that various log book entries relative to this case are attached to the declaration of Lt. Steven Fallon, submitted herewith, as Exhibit "D" (Bates 00025 - 00026, and 000884). A review of the messhall log book indicates that on January 1, 2009, I signed in at 1:50 p.m. and began my rounds.

7.     On January 1, 2009, at approximately 6 p.m., I was informed by CO Nigro that he had obtained information that inmate Sean Woodward (00-A-6563) was in possession of a weapon. I instructed CO Nigro to bring him out of the messhall for a pat frisk, to determine if he had a weapon on him. Brining him out of the messhall allowed the Officers to separate him from the other inmates, and reduces issues which might arise if he did have a weapon. I also told him I would meet him outside of the  messhall.

8.     CO Nigro had been working that shift in the messhall for a long time, and I had no reason to doubt that he was telling me the truth about his information on Woodward.

9.     When I arrived Officer Nigro and Officer Reinig had just brought inmate Woodward into the corridor. Officer Nigro conducted the pat frisk under my direct supervision. He also utilized a hand held metal detector. No weapon or contraband found on inmate Woodward. I ordered Officer Nigro to escort inmate Woodward back to his cell and to have him placed on keeplock status, pending the outcome of my investigation.

10.    Keeplock is the term for when an inmate is being kept in his cell, is not allowed to go to programs, and fed in his cell. Keeplocked inmates are still allowed one hour of recreation outside of their cells.

11. I ordered Woodward keeplocked since that would prevent him from circulating among the rest of the general population inmates while the information regarding the weapon was investigated. Obviously, information that an inmate has a weapon must be taken seriously, as an inmate so armed is a threat to the safety and security of facility staff and other inmates.

12. Inmate Woodward was released from keeplock on the evening of January 4, 2009. My investigation did not produce any weapon in possession of inmate Woodward.

13. At no time on January 1, 2009, did I ever touch inmate Woodward, or see anyone else threaten or assault him. The frisk of inmate Woodward was appropriate and, as far as I know, based on a lead which was obtained by CO Nigro.

14. I have no knowledge of whether or not inmate Woodward was kept in his cell after the evening of January 4, and, if so, the basis for that.

15. I do note that the messhall log book for January 1, 2009, indicates that at 6:05 p.m., inmate Woodward was sent back from the messhall to his block, and keeplocked pending an investigation (Bates No. 000884). The log book entry for B Block on that same date indicates that at 6:25 p.m., inmate Woodward arrived back on his block, and was keeplocked "per Nigro" (Bates No. 00025).

16. The log book entry for B Block on January 6, 2009, indicates that at 10:55 a.m., inmate Woodward was transferred from B Block, to C block, 14 company, cell 15 (Bates No. 00026). The log book entry for C Block on January 6, 2009, confirms that Woodward was received at 11:55 .am., from B Block, 8 company, and housed in 14 company, cell 15 (Bates No. 00027). Neither entry indicates that Woodward was keeplocked, which normally would be entered if he was on keeplock.

17. I would also note that if I had touched inmate Woodward, used force on him in anyway, or seen any Officers use force on him, I would have completed a Use of Force report to document what happened. I did not do so because no force was used on inmate Woodward.

18. Sometime in mid-January, I was asked about the events of January 1, by Lt. Fallon, who was investigating Woodward's grievance regarding CO Nigro, CO Reinig, and myself. I directed Officer's Nigro and Reinig to write memorandums to me regarding what had happened and on January 13, completed my own memorandum regarding those issues. I then submitted all three documents to Lt. Fallon. I am informed that copies of my memorandum as well as those of CO Nigro and CO Reinig are attached to the Fallon declaration as Exhibit "B" (Bates Nos. 000184 to 000187). My memorandum of January 13, 2009, is true and accurate to the best of my knowledge. Also, the memorandums of CO Nigro and CO Reinig conform to my recollection of the events of January 1, 2009.

19. As I indicated in my memorandum of January 13, 2009 to Lt. Fallon, at no time did I or anyone else assault or threaten inmate Woodward. I also stated that I had no knowledge of inmate Woodward filing prior grievances or complaints (Bates No. 000185). The pat frisk was conducted per department directive as well as facility policy and procedure.

20. As can be seen from the above, I directed that inmate Woodward be frisked, and then placed in keeplock, for the safety, security and good order of the facility.

21. I did not, and would not, have an inmate frisked and/or placed in keeplock in retaliation for filing grievances or law suits. I had no knowledge of any of inmate Woodward's grievances or law suits when I directed that he be searched and then keeplocked.

22. Accordingly, I request that this Court grant this Motion for Summary Judgment and dismiss plaintiff's complaint.

Dated: November _8_, 2012

　　　　　　　　　　　　　　　　　　　　　　　_____/s/ *Timothy Lewalski*_____
　　　　　　　　　　　　　　　　　　　　　　　TIMOTHY LEWALSKI