UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

WOODWARD

                               Plaintiff,

vs.

LEWALSKI, et al.                             **Docket No. 09-CV-0451**

                              Defendants.

───────────────────────────────

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

 

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants
By
GEORGE MICHAEL ZIMMERMANN
Assistant Attorney General of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
(716) 853-8444
George.Zimmermann@ag.ny.gov

**PRELIMINARY STATEMENT**

Defendants Denis Camp, Steven Fallon, Michael Hojsan, Timothy Lewalski, Matthew Mann, and Quenton Scissum submit this Memorandum of Law in response to plaintiff's reply papers (Doc. Nos. 106 - 109) and in further support of their Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("FRCP") 56 (Doc. Nos. 94 - 104). For the reasons stated in the defendants' original motion papers, as well as the reasons listed below, the defendants' Motion for Summary Judgment should be granted and the plaintiff's Third Amended Complaint (Doc. No. 38; hereinafter "the Complaint" or "Compl") dismissed.

**STATEMENT OF FACTS**

The facts pertinent to the plaintiff's claims have been fully briefed in the defendants' original submissions and will not be restated here. Generally, this case involves an inmate in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), who alleges that the defendants mistreated him, in retaliation for his use of the DOCCS grievance procedure, which he concedes he uses frequently. (¶ 4 of the declaration of Shawn Woodward, Doc. No. 109).

**Point I**

**THE PLAINTIFF LACKS ADMISSIBLE EVIDENCE
TO CREATE A MATERIAL QUESTION OF UNDISPUTED FACT**

Pursuant to Federal Rules of Civil Procedure ("FRCP") 56 (c), a defendant is entitled to judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Whether in support, or opposition, of such a Motion, the parties must submit documents which "set forth such facts as would be admissible in evidence". FRCP 56 (e); see also Local Rule 56(a)(3) and Rubens v. Mason 387 F.3d 183, 188 (2nd Cir., 2004). However, in opposition to the instant motion, regarding many facts, the plaintiff relies

2

either on inadmissible evidence, or no evidence at all, in arguing that the defendants' motion should be denied.

For instance, in response to the defendants' Statement of Facts (Doc. No. 94-1), on several points the plaintiff responds "deny for lack of information" (¶¶ 63, 64, 101, Plaintiff's Response to Rule 56 Statement, Doc. No. 106). This is not a proper denial, as it contains no "citation to evidence that would be admissible". Local Rule 56 (a)(3). The plaintiff also submits hearsay as evidence. As an example, in his declaration, the plaintiff asserts that after he changed cells on December 15, he "learned that the inmate that had been in B-8-1T, who they moved into my old cell in B-7-1T, was at Wende for court for just a short time, and was not attending any programs" (Woodward dec. ¶ 11). Such a statement, for which the plaintiff does not even provide a source, is rank hearsay and inadmissible. Federal Rules of Evidence Rule ("FRE") 801 (c).

The plaintiff also offers evidence of defendants' past behavior in an attempt to show that they are in conformity with plaintiff's allegations, which violates FRE 404 (a). As one example, the plaintiff alleges that defendant Mann "has a history of egregious violations of inmates' rights" and refers to a verdict against defendant Mann (Plaintiff's Response to Rule 56 Statement ¶ 165 and Woodward dec. ¶ 18). He also alleges that he saw Mann harassing other inmates who were troublemakers (Woodward dec. ¶ 19). Both of these allegations are inadmissible under FRE 404 (a) as attempts to "prove the character of a person in order to show action in conformity therewith." In addition, plaintiff references the settlement of a prior law suit against defendant Lewalski (Plaintiff's Response to Rule 56 Statement ¶ 169 and Woodward dec. ¶ 25). Pursuant to FRE 408 (a)(1) evidence of a settlement is not admissible to prove or disprove the validity of a disputed claim. Therefore, any past settlements by any of the defendants, including Timothy

3

Lewalski, are inadmissible and irrelevant. In addition, the Stipulation of Settlement in the case referred to by plaintiff specifically provides that the settlement "should not be construed as an admission or acknowledgement of liability whatsoever by any of the defendants" (See ¶ 4, of Exhibit A of the declaration of George Michael Zimmermann submitted herewith).

Finally, the plaintiff makes blanket factual assertions regarding events that he could not possibly have knowledge of. As one example, the plaintiff alleges that he knows what information Imam Hassan provided Capt. Kearney, based on a conversation he personally had with the Imam (Woodward dec. ¶ 29). This is not only inadmissible hearsay, but assumes that Imam Hassan told the plaintiff everything that he told Capt. Kearney. What is obviously missing from this is any submission from Imam Hassan, contradicting the admissible submissions of the defendants.

Despite the plaintiff's offer of such inadmissible allegations, what remains is that the defendants have offered proof, in admissible form, that there is no question of material fact regarding the plaintiff's claims. While the plaintiff may assert that the defendants are urging the Court simply to accept their version of events and reject the plaintiff's (Plaintiff's Memorandum of Law, pg. 15), the defendants simply point out that plaintiff offers no evidence to contradict their version of events, particularly on the issue of retaliation. In that case, the Court must accept the defendants' version and dismiss the Complaint.

## Point II

**THERE IS NO EVIDENCE OF PERSONAL INVOLVEMENT BY OFFICER MANN IN PLAINTIFF'S DECEMBER 15 CELL TRANSFER**

As pointed out in plaintiff's original motion papers, personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award for damages under § 1983. McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1979). In

4

the case at bar, the defendants have offered both defendant Mann's own denial of personal involvement in the cell transfer, and the statement of the Deputy Superintendant of Security ("DSS") that Mann could not have caused the plaintiff's cell transfer (Doc. No. 100, <u>Mann dec.</u> ¶¶ 3, 4, and 5; and Doc. No. 102, <u>Sticht Dec.</u>. ¶¶ 8 and 13). In response, plaintiff merely argues that Mann "may" have requested that the plaintiff be transferred to a new cell (Plaintiff's Response to Rule 56 Statement ¶ 33; see also ¶¶ 34 - 37). What "may" have occurred is not evidence. The defendants have offered proof in admissible form that "[w]hatever the cause of the change of inmate Woodward's housing location, it **could not have been initiated by CO Mann**, nor would CO Mann be able to determine which cell inmate Woodward was transferred into.(emphasis added)" (<u>Sticht Dec.</u> ¶ 13). In light of this submission, the plaintiff must come forward with proof in admissible form that defendant Mann **did** have some involvement with the cell transfer. This is especially so as the only evidence plaintiff has to connect Mann to the cell transfer in the first place, was that Mann came to plaintiff's cell and informed him he was being transferred. Since plaintiff has come forward with no evidence at all that Mann had any involvement in his cell transfer, this cause of action must be dismissed.

**Point III**

**THERE IS NO EVIDENCE OF RETALIATORY INTENT BY OFFICER MANN IN PLAINTIFF'S DECEMBER 15 CELL TRANSFER**

Even if the plaintiff could come forward with evidence that Mann had some involvement in his transfer, he would still have to come forward with further proof that the transfer was done, by Mann, with retaliatory intent. This he has utterly failed to do. The plaintiff admits that none of the grievances he filed at Wende Correctional Facility prior to the cell transfer named Mann (Plaintiff's Response to Rule 56 Statement ¶ 21). In an attempt to create a question of fact on this issue, the plaintiff offers only conclusions and suppositions, not evidence. He states, for

5

instance, that as Hall Captain, Mann "would be expected to know" about plaintiff's grievances (Plaintiff's Response to Rule 56 Statement ¶ 159). He also states that "there is reason to believe" that Mann initiated plaintiff's cell transfer (<u>Woodward dec.</u> ¶ 13). Initially, this is simply incorrect (See ¶¶ 8 - 10 of the reply declaration of Matthew Mann, submitted herewith). More important, it is not evidence. What someone is "expected to know" is not proof of what someone knows, and neither is a "reason to believe". Plaintiff simply has no evidence that Mann knew of his grievance history, prior to December 27, when he alleges Mann specifically mentioned his grievances.

      The plaintiff also argues that summary judgment is not appropriate, because the defendants have not identified a non-retaliatory reason for cell transfer (<u>Woodward dec.</u> ¶ 12). This is circular logic. The plaintiff can not prove a retaliatory intent, so he puts the onus on the defendants to come forward with non-retaliatory intent. Simply put, the issue is not whether the plaintiff's cell transfer was retaliatory or not. The issue is whether Officer Mann had any involvement with the transfer, and, if so, whether it was motivated by the desire to retaliate against plaintiff for his protected activity. If someone else transferred the plaintiff to a roach infested cell, motivated by the desire to retaliate against plaintiff for his protected activity, that does not state a cause of action against defendant Mann.

      Finally, the plaintiff makes much of the fact that he filed three grievances in the days preceding his cell transfer. In fact, that is the only hard evidence he relies on in opposing Mann's motion (Plaintiff's Response to Rule 56 Statement ¶ 7). However, the fact that protected activity is followed quickly by adverse action is not, in and of its itself, enough to show retaliation. "Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is

insufficient to survive summary judgment. (citations omitted)." Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000).  Without some showing the Mann knew of plaintiff's protected activity and was involved in the plaintiff's cell transfer, the timing of the cell transfer is not enough to save the plaintiff's cause of action.

Since there is no evidence at all that Mann was involved in the transfer of plaintiff to a different cell, or that he had an retaliatory motive for doing so, this claim against Officer Mann must be dismissed.

### Point IV

### SGT. LEWALSKI CAN NOT BE HELD LIABLE FOR KEEPLOCKING THE PLAINTIFF

Sgt. Lewalski has presented evidence that on January 1, he was informed by C.O. Nigro that the plaintiff may have had a weapon, and that was the basis for his ordering that the plaintiff be keeplocked (Lewalski dec. ¶¶ 7 - 8, and 10 - 12, Doc. No. 99).  The defendants have also submitted a memorandum from C.O. Nigro stating this is what he told Lewalski (Fallon dec. Ex. B, Bates No. 0187, Doc. No. 97; see also memorandum of C.O. Reinig, Bates No. 186).  The plaintiff's response is that there is no evidence that C.O.Nigro received such a tip or that he communicated it to Lewalski (Plaintiff's Response to Rule 56 Statement ¶ 52).  Ignoring the fact that Lewalski saying, under oath, that he was given this information from Nigro is evidence, the plaintiff misses the point.  The question is not whether Nigro received such a tip, but whether he told Lewalski that he had.  Clearly, the defendants have submitted evidence in admissible form that he did.  Lewalski has therefore presented the Court with a non-retaliatory reason for placing the plaintiff in keeplock.  It is then up to plaintiff to create a question of fact on this issue, which he has not done.  His only attempt is to argue that Lewalski's version of events is an "obvious fabrication", ignoring the Nigro and Reinig memorandums which were authored on January 13,

Case 1:09-cv-00451-RJA-JJM   Document 114   Filed 01/25/13   Page 8 of 10

less than two weeks after the event in question (Fallon dec. Ex. B, Bates No. 0186 and 0187). Clearly, whether there was a tip or not is not material. What is material is whether Lewalski was informed that there was, and there is no question of fact in that regard.

It should also be noted that whether the plaintiff was kept locked in his cell for three days or twenty-three does not matter, in the absence of retaliatory intent. Twenty-three days of keeplock is not an atypical and significant hardship, over and above what a prisoner may expect. Palmer v. Richards, 364 F.3d 60, 64 - 65 (2d Cir. 2004). Therefore, the claim that the plaintiff was keeplocked by Sgt. Lewalski must be rejected.

### Point V

### THERE IS NO EVIDENCE THAT LT. FALLON RETALIATED AGAINST THE PLAINTIFF

Just as in the case of his claim against Sgt. Lewalski, in arguing against summary judgment for Lt. Fallon, the plaintiff confuses questions about what actually happened with what Lt. Fallon knew when he acted. Initially, plaintiff attributes significance to the fact that, after conducting the Involuntary Protective Custody ("IPC") hearing, DSS Sticht released the plaintiff from IPC (Plaintiff's Response to Rule 56 Statement ¶ 150). Plaintiff asserts that DSS Sticht's determination demonstrates that Fallon's recommendation "was wrongly issued" (*Id.*). This is comparable to saying that a criminal defendant's acquittal is evidence of the lack of probable cause for his arrest, which is simply not the case. This also ignores the fact that DSS Sticht has opined that Fallon's action were appropriate in this regard (Sticht Dec. ¶¶ 22 - 23). The plaintiff then makes much of the fact that Fallon's IPC recommendation was dated January 10, while the IPC was commenced January 5, and Imam Hassan's memo was dated January 7 (Woodward dec. ¶ 28; and Plaintiff's Response to Rule 56 Statement ¶ 172). This misses the point that Lt. Fallon did not come into the picture until January 10. Whether or not plaintiff's IPC status was

8

appropriate prior to January 10, has no relevance, since neither Imam Hassan nor Capt. Kearney are defendants in this matter.  The plaintiff simply has no admissible evidence to contradict that Fallon's IPC recommendation was appropriate and justified by what he knew when he issued it.

Plaintiff also challenges the correctness of Fallon's interpreting the memo of Imam Hassan as evidence of a threat to the plaintiff (Plaintiff's Response to Rule 56 Statement ¶ 101 and 147).  However, this is not evidence of a constitutional violation, nor is it a proper area for judicial review.  A violation of a state law or regulation, in and of itself, does not give rise to liability under § 1983. <u>Doe v. Conn. Dep't of Child & Youth Servs.</u>, 911 F.2d 868, 869 (2d Cir.1990).  "A prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements. (citations omitted)." <u>Lopez v. Reynolds</u>, 998 F. Supp. 252, 259 (W.D.N.Y. 1997). Further, "it is not the function of this court to micromanage the New York prison system". <u>Bush v. Goord</u>, 2009 U.S. Dist. LEXIS 130761, 15 (W.D.N.Y. Feb. 23, 2009).  Whether Fallon did his job properly is not the issue.  The issue is whether he did what he did for unconstitutional reasons.  Plaintiff's argument gets him no closer to that result.  While the memorandum of Imam Hassan itself may not, to the lay eye, be evidence of a threat against the plaintiff, Fallon also relied on the information provided by Capt. Kearney (<u>Fallon dec.</u> ¶¶ 13 - 14, and 16).  As with Sgt. Lewalski, Fallon's statement alone is admissible evidence that he had information justifying the recommendation of IPC for the plaintiff.  Of note is that the plaintiff concedes that Imam Hassan did pass information to Capt. Kearney ((Plaintiff's Response to Rule 56 Statement ¶ 147; and <u>Woodward dec.</u> ¶ 29).  While plaintiff challenges the validity of this information, he has provided no evidence, let alone admissible evidence, that Capt. Kearney did not make the statements attributed to him.  Even if the plaintiff could show that Kearney's information was

unreliable or biased, that would not be evidence that Fallon's intentions were dishonorable.

The plaintiff also attempts to show that Fallon had knowledge of plaintiff's grievances by asserting that he was informed of this history by Capt. Casacelli and that the very grievance he was investigating detailed his grievance history (Plaintiff's Response to Rule 56 Statement ¶ 142 and Plaintiff's Memorandum of Law, pg. 12).  As to the allegation regarding Capt. Casacelli, there is no evidence that Capt. Casacelli gave any information of this nature to Fallon.  None.  As to the second argument, plaintiff's position would mean that any action taken by a DOCCS employee after their investigation of an inmate grievance, would automatically be considered retaliation.  This is an absurd result.

The plaintiff presents no admissible evidence to raise a question of fact regarding Lt. Fallon's motivation, and therefore the claim against Fallon must be dismissed.

## Conclusion

Based on the foregoing, defendants submit that the Complaint must be dismissed as against all of the defendants.

Dated:  January 25, 2013
        Buffalo, New York

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants
BY:
/s/ *George Michael Zimmermann*
GEORGE MICHAEL ZIMMERMANN
Assistant Attorney General of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202
(716) 853-8444
George.Zimmermann@ag.ny.gov