UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAWN WOODWARD,

                              Plaintiff,

v.

MANN, et al.,

                              Defendants.

**REPORT AND RECOMMENDATION**

09-CV-00451(A)(M)

_____

        Before me is defendant's motion for summary judgment [94].[1] Oral argument was held on March 6, 2013 [115]. For the following reasons, I recommend that defendants' motion be granted in part and denied in part.

## BACKGROUND

        This 42 U.S.C. §1983 action arises from alleged excessive force and First Amendment retaliation committed against plaintiff by defendants, all of whom are employed by the New York State Department of Corrections and Community Services ("DOCCS"), from December 2008 through January 2009, while plaintiff was incarcerated at the Wende Correctional Facility. Upon being transferred to Wende on November 3, 2008 (defendants' Statement of Undisputed Facts [94-1], ¶8), plaintiff was initially housed in D block, until being moved to B block. Zimmerman Declaration [95], Ex. A, pp. 10-11.

---

    [1]      Bracketed references are to the CM/ECF docket entries.

### December 15, 2008 Cell Transfer

Defendant Corrections Officer Matthew Mann was the Hall Captain in B block in December 2008. Mann Declaration [114-2], ¶4. Plaintiff alleges that on December 15, 2008, he was informed by Mann that he was being transferred to 8 company, where he was placed in a roach infested cell. Plaintiff's Declaration [109], ¶9; Defendants' Statement of Undisputed Facts [94-1], ¶¶22-24. Plaintiff complained about the condition of his cell to the company officer, who is not a party to this case. Id., ¶¶25-26.

Prior to this transfer, log entries indicate that plaintiff had filed five grievances while at Wende. Parnham Declaration [107], Ex. E, Bates Nos. 00039, 00044. These included a November 25, 2008 grievance about conditions in D block (id., Ex. B., Bates No. 000128-29), a December 1, 2008 grievance directed to Elmira Correctional Facility, where he was previously incarcerated (id., Bates No. 000134-35), and a December 8, 2008 grievance against non-party Corrections Officer Burns for not allowing plaintiff to go to breakfast or to attend religious services on December 7 and 8, 2008. Id., Bates No. 000165-66. None of the defendants in this case were named in these grievances.

### December 27, 2008 Excessive Force Incident

Plaintiff and Mann encountered each other again on December 27, 2008. Defendants' Statement of Undisputed Facts [94-1], ¶38. According to plaintiff, he complied with Mann's request that he submit to a pat frisk, but instead of frisking him, Mann struck him in the ribs with his fist while his hands were against the wall. Plaintiff's deposition transcript [95], pp. 35-37. During the assault Mann allegedly stated "[s]omething to the effect that the next

time I write a grievance on him or B Block or Complaint or whatever, that it will be more than a hit, tap, something like that." Id., p. 37. According to plaintiff, Mann's assault "[p]robably [caused him] soreness for more than two hours", but he conceded that he "wouldn't necessarily call it pain" and he did not treat with any medical personnel. Id., pp. 37-38. Plaintiff filed a grievance that day alleging that he was struck by Mann. Defendants' Statement of Undisputed Facts [94-1], ¶46.

Mann denies assaulting or threatening plaintiff. Mann Declaration [100], ¶6. He also denies knowledge that plaintiff had filed prior grievances. Id., ¶8.

**January 1, 2009 Excessive Force Incident and Keeplock Placement**

Defendant Timothy Lewalski, a Sergeant, was working in the mess hall on January 1, 2009. Defendants' Statement of Undisputed Facts [94-1], ¶48. According to Lewalski, he was informed by Corrections Officer Nigro, who was working in the mess hall, that he had obtained information indicating that plaintiff might be in possession of a weapon. Lewalski Declaration [99], ¶7. Consequently, he instructed Nigro to bring plaintiff out of the mess hall for a pat frisk. Id. Plaintiff was escorted out of the messhall by Nigro and Corrections Officer Reinig. At this point, the parties' versions of events diverge.

Plaintiff states that while he was against the wall awaiting a pat frisk, Lewalski "grabbed me by the neck and choked me" and told him "[s]omewhere along the lines that if I say something I was going to the box. Then, you know, I'd be assaulted more." Plaintiff's deposition transcript [95], pp. 51-53. When Lewalski stopped choking him, he "kind of like punched me in the back to the side of the head." Id., p. 54. Plaintiff did not seek any medical attention

following the alleged assault, and concedes that he did not sustain any permanent injuries. Id., pp. 79-80. That day, plaintiff submitted a grievance arising from this incident. Zimmermann Declaration [95], Ex. B, Bates No. 000181-82. [2]

According to Lewalski, plaintiff was pat frisked and taken to his cell to be placed on keeplock status without incident. Lewalski Declaration [99], ¶9. Lewalski denies ever touching plaintiff. Id., ¶13. He also denies knowledge of plaintiff's grievance or litigation history. Id., ¶19. The parties agree that they did not know each other prior to this incident. Defendants' Statement of Undisputed Facts [94-1], ¶82.

Lewalski's investigation did not reveal a weapon in plaintiff's possession. Lewalski Declaration [99], ¶12. Lewalski alleges that he placed plaintiff into keeplock for security purposes while this information was investigated, and that he released plaintiff from keeplock on January 4, 2009, but denies knowledge of whether defendant was kept in his cell thereafter. Lewalski Declaration [99], ¶¶7-12, 14.

**Plaintiff's January 10, 2000 Placement into Involuntary Protective Custody**

On January 6, 2009 plaintiff was transferred to C block. Defendants' Statement of Undisputed Facts [94-1], ¶98. The log book entry does not indicate that plaintiff was on keeplock status at that time. Id., ¶99. On January 7, 2009, Imam A. Aleem Hassan, the Islamic Chaplain at Wende sent a memorandum to non-party Captain Kearney detailing an altercation

---

[2] The grievance states that "*Sergeant Naino* grabbed me by the neck, choked me and punched me in the back of the head" and told him "if I tell anyone that I was going to the box and would get . . . 'a beatdown,'" Zimmermann Declaration [95], Ex. B, Bates No. 000181 (emphasis added). Plaintiff testified that when Fallon came to interview him on January 10, 2009, he stated "that the names that I mentioned in the grievance were incorrect". Id., Ex. A, p. 66.

between plaintiff and another inmate [89-1].[3] The January 8, 2009 C block log book contains a entry stating, "As per Capt. Kearney, [plaintiff] does not get to go to any programs until further notice." Defendants' Statement of Undisputed Facts [94-1], ¶102 (emphasis in original).

The Superintendent of Wende designated Captain Casaceli to investigate plaintiff's grievance arising from the January 1, 2009 incident with Lewalski. Fallon Declaration [97], ¶7. In turn, Captain Casaceli assigned the matter to defendant Steven Fallon, a Lieutenant. Id. On January 10, 2009, Fallon interviewed plaintiff in his cell. Defendants' Statement of Undisputed Facts [94-1], ¶103. This was their first encounter. Id., ¶¶106-7. According to Fallon, he had no knowledge of plaintiff's history of grievances or lawsuits. Fallon Declaration [97], ¶4.

Plaintiff informed Fallon that he had been on keeplock status since January 1, 2009, but was unaware of the reason. Defendants' Statement of Undisputed Facts [94-1], ¶111. Fallon next spoke to Kearney, who informed him that plaintiff had been kept in his cell since January 5, 2009 pending Involuntary Protective Custody ("IPC") due to possible threats against him from the members of the Muslim community. Id., ¶124. Based on this information, and after speaking with Casaceli, Fallon completed an IPC recommendation on January 10, 2009 for plaintiff. Fallon Declaration [97], ¶¶14-16. His recommendation stated that "the Muslim Community is going to make a 'hit' on [plaintiff]". Id., Ex. A, Bates No. 000258.

A hearing on Fallon's IPC recommendation was held before Thomas Sticht, Wende's Deputy Superintendent for Security, on January 16, 2009. Defendants' Statement of

---

[3] Because of the sensitive nature of this document, at defendants' request and with plaintiff's consent, it has been filed under seal [89-1].

Undisputed Facts [94-1] ¶145. At the conclusion of the hearing, Sticht concluded that plaintiff did not need to be in IPC. Sticht Declaration [102], ¶22. In reaching this determination, he stated that:

> "the written report of Lt. Fallon provided little information further inquiry including confidential information gives little factual information as to a threat to inmate Woodward's safety. Inmate Woodward's testimony is a complete denial of any issues. The reason for this determination is inmate Woodward's statements amount to acknowledge [*sic*] of certain issues within the Muslim community they are only vague issues and none appear to be actual threat by any one individual." Id., Ex. A, Bates No.000278.

Even though Sticht concluded that plaintiff did not agree with Fallon's IPC recommendation, he did not believe that Fallon "was wrong or misguided" in issuing the recommendation. Sticht Declaration [102], ¶22. In fact, he believed that "it was entirely appropriate" for him to issue the recommendation. Id., ¶23.

As a result of this conduct, plaintiff's Third Amended Complaint [38], which was filed when he was proceeding *pro se*,[4] alleges the following causes of action:

**First Cause of Action** - Plaintiff alleges that Mann retaliated against him on December 15, 2008, by moving him "into a roach infested cell", which motivated by plaintiff "previously filing 2 separate grievances on defendant's co-workers and helping another inmate file a grievance on [him]", in violation of his First Amendment rights. It is also alleges that on December 27, 2008, "defendant Mann told plaintiff to put his hands on the wall. Instead of being searched, defendant Mann punched plaintiff in the ribs and told plaintiff the next time he write

---

[4] During the course of discovery, I appointed counsel for plaintiff.

[*sic*] a grievance or letter about B-Block it will get worse than a tap on the ribs", in violation of his First and Eighth Amendment rights

**Second Cause of Action** - Plaintiff alleges that on January 1, 2009, Camp, Hojsan and Scissum took him "into the messhall's hallway for a unwarranted pat frisk."[5] "While plaintiff's hands were on the wall, defendant Lewalski . . . grabbed plaintiff by his neck choked plaintiff and punched plaintiff in the back of the head . . . then threatened plaintiff with box/isolation placement and physical abuse if he told anyone." He alleges that he was then placed in keeplock for 12 days, "before he knew the reason for his confinement." According to plaintiff, Lewalski's conduct was in violation of his First and Eighth Amendment rights.

**Third Cause of Action** - Plaintiff alleges that on January 10, 2009 Fallon "falsified a report recommending that [he] be placed in involuntary protective custody due to his life being in danger", in violation of his First and Fourteenth Amendment rights.

**ANALYSIS**

**A.    Summary Judgment Standard**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must

---

[5]    Plaintiff does not oppose dismissal of the claims against defendants Camp, Scissum and Hojsan in their entirety, as well as the official capacity claims against the remaining defendants. Plaintiff's Memorandum of Law [108], pp. 1-2, n. 1.

examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.'" Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

While the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is *a genuine issue for trial*." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . . The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

B.     **Excessive Force Claims against Mann and Lewalski**[6]

Although defendants initially argued that plaintiff has not demonstrated anything more than a *de minimis* use of force and injury (defendants' Memorandum of Law [94-2], Point VII), at oral argument, defendants' counsel admitted that there "probably are" triable issues of fact concerning the excessive force claims.

"[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action . . . . The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, *provided that the use of force is not of a sort 'repugnant to the conscience of mankind*.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (emphasis added).

In evaluating an excessive force claim, "[t]he core judicial inquiry, . . . [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm". Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1178 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . . This is true whether or not significant injury is evident." Hudson, 503 U.S. at 9. "In determining whether the use of force was wanton and unnecessary, it may . . . be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the

---

[6] In opposing defendants' motion, plaintiff relies on Mann's history of conduct against other inmates (plaintiff's Response to Defendants' Rule 56 Statement [106], ¶¶165, 166) and the settlement of a prior lawsuit against Lewalski for an alleged retaliatory assault (id., ¶169). It is unnecessary for me to consider the admissibility of this evidence (which defendants have not moved to strike) since I have not relied upon it in addressing defendants' motion for summary judgment.

responsible officials,' and 'any efforts made to temper the severity of a forceful response.' . . . The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id., at 8.

"Accordingly, where a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically" summary judgment is appropriate "even where the plaintiff's evidence of injury [is] slight and the proof of excessive force [is] weak." Wright v. Goord, 554 F.3d 255, 269 (2d Cir. 2009).

Notwithstanding the absence of any severe or permanent injuries from the alleged uses of force by Mann and Lewalski, plaintiff's allegation that defendants acted without provocation, coupled with the alleged threatening statements that accompanied each encounter, are sufficient to raise a triable issue of fact as to whether defendants acted for no other reason than out of malicious intent to cause harm. *See* Abascal v. Fleckenstein, 2012 WL 638977, *6 (W.D.N.Y. 2012) (Skretny, J.) ("Plaintiff's purported bruise is certainly 'slight,' and his allegation of a single elbow blow to his side is also 'weak.'. . . Crediting Plaintiff's version of events, however, as this Court must in considering Defendants' motion for summary judgment, . . . Fleckenstein's brief assault was completely unprovoked and unrelated to any effort to maintain or restore discipline"); Felder v. Steck, 2013 WL 144945, *3-4 (W.D.N.Y. 2013) (Schroeder, M.J.) (denying summary judgment where plaintiff alleged that he was punched repeatedly about the head without provocation resulting in bruising and swelling that he did not report until

two weeks later).[7]  Therefore, I recommend that this aspect of defendants' motion be denied.[8]

C.   **First Amendment Retaliation**

"Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right." Colon v. Coughlin, 58 F.3d 865, 871-72 (2d Cir. 1995). "[B]ecause [of] . . . both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, . . . prisoners' claims of retaliation [are examined] with skepticism and particular care." Id. at 872.  To prevail on a claim of retaliation, an inmate bears the burden of showing "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Defendants concede that "plaintiff wrote a number of grievances between his arrival at Wende and the events alleged in the Complaint, and that this is a protected activity." Defendants' Memorandum of Law [94-2], p. 9.

---

[7] *Compare with* Felder v. Diebel, 2012 WL 6690239, *5 (W.D.N.Y. 2012) (Curtin, J.) (finding use of force *de minimis* where it was alleged that defendant "slapped the plaintiff twice and choked him" and plaintiff testified that he "saw stars" and was "woozy" following the alleged assault, but there was no indication that he sought medical treatment until two days later and these records did not indicate injuries consistent with his allegations).

[8] While I express no view on the ultimate merits of plaintiff's excessive force claims, if successful, "the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." Wilkins, 130 S.Ct. at 1180.

With respect to the remaining elements of a retaliation claim, "[a]dverse action is defined objectively as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights." Bowens v. Pollock, 2010 WL 5589350, * 11 (W.D.N.Y. 2010) (Schroeder, M.J.), adopted 2011 WL 146836 (W.D.N.Y. 2011) (Arcara, J.). "The test is an objective one, and does not depend on whether the plaintiff himself was in fact deterred from continuing to file grievances." Allah v. Poole, 506 F.Supp.2d 174, 186 (W.D.N.Y. 2007) (Larimer, J.). An "alleged assault . . . is retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Edwards v. McGrain, 2012 WL 6701826, *6 (W.D.N.Y. 2012) (Schroeder, M.J.) (citing cases). "[T]ransfers to other facilities or housing units can [also] satisfy the adverse-action requirement." Allah, 506 F.Supp.2d at 187.

In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, factors to be considered include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." Cole v. New York State Department of Correctional Services, 2012 WL 4491825, *11-12 (N.D.N.Y.), adopted 2012 WL 4506010 (N.D.N.Y. 2012).

Upon satisfying his initial burden of demonstration retaliation, "the burden shifts to defendants to establish that the same adverse action would have been taken even in the absence of the plaintiff's protected conduct, *i.e.*, 'even if they had not been improperly motivated.'" Davidson v. Desai, 817 F.Supp.2d 166, 194 (W.D.N.Y. 2011) (Skretny, J./Foschio,

M.J.) (*quoting* Graham, 89 F.3d at 80). "At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail." Davidson v. Chestnut, 193 F.3d 144, 149 (2d Cir. 1999). *See* Murray v. Hulihan, 436 Fed.Appx. 22, 23 (2d Cir. 2011) (Summary Order) ("Defendants cannot be liable for First Amendment retaliation if they would have taken the adverse action even in the absence of the protected conduct").

1. **Defendant Mann**

   a. **December 27, 2008 Excessive Force Incident**

Defendants seek dismissal of this claim, arguing that "plaintiff had not filed any grievances mentioning Officer Mann's name, which begs the question why Mann would be concerned about the plaintiff's grievances." Defendants' Memorandum of Law [94-2], p. 10. Relying on Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005), defendants argue that this claim relies "exclusively on the plaintiff's self serving testimony" and that, "[w]here, as here, the documentary evidence produced during discovery fails to add substances to the allegations of the Complaint, summary judgment is appropriate." Id., p. 10. In Jeffreys, the Second Circuit held that "in the *rare circumstance* where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may conclude that no reasonable jury would credit the plaintiff's testimony. 426 F.3d at 554 (emphasis added).

This is not such a circumstance. Although plaintiff relies on his own testimony to counter defendants' version of events, "in order for the Jeffreys exception to apply, Plaintiff's

testimony must be 'contradictory or incomplete'", which defendants have failed to establish. Torres v. Caron, 2009 WL 5216956, *8 (N.D.N.Y. 2009).

I recognize that "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." Hare v. Hayden, 2011 WL 1453789, *4 (S.D.N.Y. 2011). However, crediting plaintiff's testimony that Mann threatened further reprisals for future grievances, plaintiff has established a triable issue as to whether the assault was retaliatory. Therefore, I recommend that this aspect of defendants' motion be denied.

### b. December 15, 2008 Cell Transfer

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). While defendant Mann concedes that it is possible that he informed plaintiff that he was being transferred to a new cell, he states that he "would have simply been passing on information which [he] received through the chain of command", and denies that he "initiate[d] such a change of housing" or that he "determine[d] where he would be moved to." Mann Declaration [100], ¶5.[9] Sticht corroborates that "[w]hatever the cause of the change of [plaintiff's] housing location, it could not have been initiated by CO Mann, nor would CO Mann be able to determine which cell [he] was transferred into." Sticht Declaration [102], ¶13. Based upon this evidence, defendants argue that this claim must be dismissed for lack of personal involvement since Mann had no role in plaintiff's cell

---

[9] Mann has also submitted a second declaration [114-2] in reply, stating that he "never requested that an inmate be transferred because he filed a grievance." Id., ¶16.

-14-

transfer, as he lacked authority to make such a transfer. Defendants' Memorandum of Law [94-2], Point I.

In response, plaintiff argues that "Mann contests only whether he actually took this adverse action personally, but in light of the effectively uncontested fact that he could have done so by requesting the transfer from the appropriate chain of command, and from Defendant Mann's later retaliatory assault and statement of his retaliatory motivation combined with his role in informing [plaintiff] of the transfer, the jury could conclude Defendant Mann was personally involved". Plaintiff's Memorandum of Law [108], p. 15 n. 3.

In his response to defendants' statement of undisputed facts ([106], ¶¶34, 37) plaintiff cites <u>Jackson v. Johnson</u>, 15 F.Supp.2d 341, 353 (S.D.N.Y. 1998), wherein the defendant corrections officer sought summary judgment on the plaintiff's retaliatory transfer claim based on a lack of personal involvement, by relying on a declaration from a supervisor that "a Correction Officer, such as [defendant], lacks the authority to initiate or authorize any such transfer." In denying the motion, the court held that "while [the defendant] lacks the authority to initiate or authorize a transfer, that is not to say that he was not personally involved in one or more of these transfer decisions. Nor does [the supervisor] allege personal knowledge of the facts of Jackson's transfer." <u>Id</u>. The defendant later prevailed on his supplementary motion for summary judgment which was supported by his affidavit stating that he "'neither requested nor had any personal involvement in the decision to transfer plaintiff'". <u>Jackson v. Johnson</u>, 30 F.Supp.2d 613, 616 (S.D.N.Y. 1998).

Based upon Mann's alleged assault that followed shortly after this cell transfer, coupled with Mann's failure to more broadly disavow any personal involvement in plaintiff's cell transfer, I recommend that this aspect of defendants' motion be denied.

### 2. Defendant Lewalski

#### a. January 1, 2009 Excessive Force Incident

Defendants argue that since "Lewalski made no comments indicative of retaliation, had an articulable reason for frisking and keeplocking the plaintiff, and had no prior history with the plaintiff, combined with plaintiff's less than stellar disciplinary history, there is no evidence to create a triable issue of fact as to the causal connection between Sgt. Lewalski's direction that the plaintiff be frisked and keeplocked, and the plaintiff's protected activity." Defendants' Memorandum of Law [94-2], p. 12.[10] However, plaintiff's claim is not that he was subjected to a retaliatory pat frisk by Lewalski - instead his retaliation claim arises, in part, from the alleged assault. Plaintiff's Memorandum of Law [108], pp. 9-10. Although this was made clear in plaintiff's opposition to defendants' motion for summary judgment, it was not addressed in defendants' reply.[11]

---

[10] In their reply, defendants argue for the first time that even "[t]wenty-three days of keeplock is not an atypical and significant hardship, over and above what a prisoner may expect."Defendants' Reply Memorandum of Law [114], p. 8. Since this argument was not raised in defendants' initial moving papers, it will not be considered. *See* Duryea v. County of Livingston, 2007 WL 1232228, *6 n. 3 (W.D.N.Y. 2007) (Telesca, J.).

[11] At oral argument, defendants' counsel argued that plaintiff's retaliation claim against Lewalski should be dismissed because the protected activity did not precede the alleged assault. However, this argument was not raised in defendants' motion and will not be considered.

In any event, since the alleged assault by Lewalski followed days after plaintiff filed a grievance against Mann for his alleged assault and was accompanied by similar threats of reprisals for reporting grievances, I conclude that plaintiff has raised a triable issue of fact as to whether the alleged assault by Lewalski was in retaliation for his grievances, and recommend that this aspect of defendants' motion be denied.

### b. Plaintiff's Keeplock Placement

Defendants argue that Lewalski possessed a non-retaliatory motive for placing plaintiff into keeplock on January 1, 2009. Defendants' Memorandum of Law [94-2], p. 12. According to Lewalski, after learning from Corrections Officer Nigro that plaintiff might be in possession of a weapon, he placed plaintiff into keeplock for security purposes while this information was investigated. Lewalski Declaration [99], ¶¶7-12. In support of Lewalski's version of events, defendants rely on two memoranda dated January 13, 2009 to Lewalski. The first, from Corrections Officer J. Reinig, stating that he was informed by Nigro that plaintiff "may be in possession of a weapon" (Fallon Declaration [97], Ex. B, Bates No. 00186), and the second, from Nigro stating, "I informed you that I received information that [plaintiff] may be carrying weapon." Id., Bates No. 000187.[12]

Plaintiff disputes Lewalski's proffered explanation for why he was placed in keeplock, alleging that it is an "obvious fabrication" since "nobody ever came to search my cell or to do anything else to investigate this supposed suspicion." Woodward Declaration [109], ¶27.

---

[12] Plaintiff does not dispute the admissibility of the memoranda.

Although this is a close call, recognizing that plaintiff's placement into keeplock occurred immediately on the heals of Lewalski's alleged retaliatory assault and giving plaintiff every favorable inference as the non-movant, I conclude that a triable issue of fact exists as to whether plaintiff's placement into keeplock on January 1, 2009 was in retaliation for his grievances. Therefore, I recommend that this aspect of defendants' motion be denied.[13]

### 3. Defendant Fallon

Defendants likewise argue that defendant Fallon has demonstrated a non-retaliatory reason for his conduct, namely that upon learning that there was credible evidence suggesting that plaintiff was in danger, he directed that plaintiff be placed in IPC for his safety. Defendants' Memorandum of Law [94-2], pp. 12-13. In response, plaintiff argues that Fallon's recommendation was based on false information that the Muslim community had a plan to make a "hit" on him. Plaintiff's Memorandum of Law [108], p. 17.

Although defendants concede that the memorandum from the Muslim Chaplain "may not, to the lay eye, be evidence of a threat against the plaintiff" (defendants' Reply Memorandum of Law [114], p. 9), they argue that "Fallon also relied on the information provided by Capt. Kearney" Id. However, defendants fail to identify evidence in the record establishing what additional information was relayed from Captain Kearney to Fallon beyond Captain Kearney advising him that plaintiff "was having trouble with Muslim inmates." Fallon Declaration [97], ¶14. Moreover, in disagreeing with Fallon's IPC recommendation, Sticht noted

---

[13] Although plaintiff alleges that Lewalski is responsible for 12 days of keeplock confinement, the duration of plaintiff's keeplock confinement attributable to Lewalski is disputed. Lewalski Declaration [99], ¶12.

-18-

that "further inquiry including confidential information gives little factual information as to a threat to [plaintiff's] safety". Sticht Declaration [102], Ex. A, Bates No.000278. *See* Bennett v. Goord, 343 F.3d 133, 138 (2d Cir. 2003) ("Bennett's allegations of retaliation are further supported by the fact that essentially all relevant adverse actions by DOCS officials were subsequently found to have been unjustified").

If Fallon falsified his IPC recommendation, it would create the inference that it was retaliatory. *See* Gayle v. Gonyea, 313 F.3d 677, 683 (2d Cir. 2002) ("A false reason for the report's issuance would support the inference that the real reason was the improper one: retaliation"). This too is a close call. However, giving plaintiff every favorable inference as the non-movant and recognizing that at the summary judgment stage, defendants should prevail only "if the undisputed facts demonstrate that the challenged action *clearly* would have been taken on a valid basis alone", I recommend that this aspect of defendants' motion be denied. Davidson, 193 F.3d at 149 (emphasis added).

**CONCLUSION**

For these reasons, I recommend that defendants' motion [94] be granted to the extent of dismissing defendants Camp, Hojsan, Scissum, and all official capacity claims against the remaining defendants, but otherwise be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by May 28, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(c), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this]

decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: May 8, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge